IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | } } | Case No. 13-40997-JJR |
| ANGIE CURTIS, | } } | Chapter 13 |
| Debtor. | } } |  |

## OPINION AND ORDER

Angie Curtis (the "Debtor") proposed a plan (Doc 53, and herein, the "Plan") in her chapter 13 case that, if completed, will pay the arrears owing on the Agreement for Deed (Doc 49, Ex. A, and herein the "Agreement" or "Agreement for Deed") under which she is purchasing her homestead. She also proposed to maintain the ongoing monthly payments that will become due under the Agreement over the term of the Plan. The vendor under the Agreement, AR Seven, LLC (the "Creditor") objected to confirmation of the Plan and filed a motion asking the Court to declare that the rights of the Debtor under the Agreement were terminated prepetition. (Docs. 33, 34, 56.) The Standing Chapter 13 Trustee sides with the Debtor, and argues that the Agreement for Deed should be treated as a secured claim in the Plan. (Docs. 52, 54.) To determine whether the Plan is confirmable in light of the Creditor's objection, the Court must decide whether the Agreement for Deed should be treated as an executory contract, which must be assumed or rejected under Code §§ 365 and 1322(b)(7), or as a secured transaction for which defaults may be cured and payments maintained over the life of the Plan pursuant to Code § 1322(b)(5).[1]

---

[1] References to the "Code" and "Bankruptcy Code" are to 11 U.S.C. § 101, *et seq.*

1

Background and Facts

The facts are undisputed. On October 15, 2011, the Debtor and Creditor entered into the Agreement for Deed along with a separate Promissory Note (the "Note") for the Debtor's purchase of her present homestead. (Doc. 34, Ex. A. ) The purchase price of $32,000.00, less a down payment of $750.00, was financed over twenty years at 10.0208% interest. (*Id.*) The Note and Agreement are not the typical "bond for title" or "lease purchase agreement" so often seen and discussed in Alabama, but rather contain particular language that more closely resembles a promissory note and real estate mortgage than a conventional lease with a purchase option. In fact, the concept of leasing the property is conspicuously absent from the Agreement, except in the event of default and termination, at which point the Agreement recites that it will then morph into a month-to-month tenancy. In contrast to the absence of lease language, the Note repeatedly uses secured transaction jargon: "The note, principal and interest *is secured by* an Agreement for Deed on [the property]." The Note further provides for reasonable attorney fees "in enforcing the Agreement for Deed *that secures* this note; [and] in protecting the *collateral encumbered* by that Agreement for deed; or … in defending or asserting the holder's rights in that *collateral*." (*Id.*) (emphasis added.)

Like a standard mortgage, the Agreement grants the Debtor-vendee the right to possession, obligates her to pay taxes and maintain insurance, provides that she assumes risk of loss and all liability, and bestows all other incidences of ownership but-for legal title. The Agreement does not contain the usual granting, habendum and defeasance clauses, or power of

2

sale foreclosure provisions typically found in a mortgage, although it does contain conveyance language: "It is mutually agreed, by and between the parties hereto, that the [Creditor] *transfers the said property* to the [Debtor] in strictly "AS IS" condition . . . ." (*Id.*) (emphasis added.) Upon completion of the payments, whether at maturity of the Note or if sooner prepaid, the Creditor-vendor is required to deliver "a good and sufficient deed" for the property to the Debtor – the functional equivalent of defeasance of a mortgagee's legal title upon payment of the secured debt. The Creditor's remedies upon the occurrence of default purport to convert the Debtor's interest in her homestead to a month-to-month tenancy that may be followed by eviction through an unlawful detainer action – not unlike strict foreclosure followed by an ejectment.[2]

When the Agreement for Deed and typical real estate mortgage are juxtaposed, one is reminded of the anecdote that places considerable weight on waddling and quacking as evidence that the object being scrutinized is likely a duck. The Agreement waddles and quacks like its mortgage-cousin, and it is only the absence of a few metaphorical feathers that distinguishes it from a full-fledged mortgage. What is certain is that the Note and Agreement structured an arrangement that provided for the secured, purchase-money-financing of the Debtor's homestead, and served the same purpose for both parties as would a typical purchase-money note and mortgage; more so, as mentioned, than a simple landlord-tenant lease with a purchase option.

The Debtor has resided in the property with her daughter since the Agreement's inception, and remained in possession when her bankruptcy case was filed. The Debtor is in default in her prepetition payments (scheduled at $4,500; Doc. 1, Sch. D) owing under the Note

---

[2] The Agreement for Deed was notarized but it does not appear to have been recorded.

3

Case 13-40997-JJR13    Doc 68    Filed 09/19/13    Entered 09/19/13 13:35:55    Desc Main
Document    Page 3 of 12

and Agreement, and the Creditor sent her prepetition termination notices and filed an action in state court for unlawful detainer. That action had not been adjudicated when the bankruptcy case was filed. (Doc. 34, Ex. A.)

Recall, the Debtor's Plan proposed to treat the Agreement for Deed as a secured transaction, cure the prepetition default over the life of the Plan, and resume the ongoing monthly payments per the Note. The Creditor objected to this proposed treatment of its claim, and argued that the Agreement is an executory contract, not a secured transaction. The Creditor also asserted that, in any event, the termination notices sent prepetition were sufficient under state law to destroy any right the Debtor may have had to include her interest in her homestead as property of her bankruptcy estate under Code § 541, despite the fact that she remains in possession. Therefore, the Creditor postulated, there was simply no interest left for the Debtor to assume or otherwise protect in her bankruptcy case.

## Law, Analysis and Conclusions

Synthesizing the law applicable to the issues in this case is difficult. Among other variances, the cases differ in their deference to state law, the language used in the transaction documents, and the relationship and history between the parties. Even within each of the two main lines of cases— those finding an executory contract and those finding a secured transaction—there are differences in rationale.

The Court is guided to its conclusion by the Eleventh Circuit's decision in *Sipes v. Atlantic Gulf Communities Corp. (In re General Development Corp.)*, 84 F.3d 1364 (11th Cir. 1996). In that case, the debtor was a developer and seller of real estate, who had entered into installment land sales contracts as vendor for various residential lots in Florida. In analyzing whether the debtor-vendor could treat the installment sales contracts as executory contracts

4

subject to rejection, or was required to treat them as secured obligations (the objecting vendees' preferred result), the circuit court adopted the district court's decision allowing rejection, and incorporated large excerpts of the district court's opinion as an appendix to the circuit court's published decision. While the *General Development* decision held that the land installment sales contract in that case could be treated as executory, and therefore subject to assumption or rejection, the court's rationale supports a finding in the instant case that the Debtor may treat the Agreement for Deed as a secured transaction, and cure the prepetition defaults through the Plan.

The Eleventh Circuit, in approving the district court's opinion, pointed out that the position of the debtor—as vendor or vendee—is crucial to determining the permitted treatment of an installment land sale contract in bankruptcy. In support of its application of what has come to be known as the "functional approach" to determining executoriness, the circuit court cited with approval *In re Booth*, 19 B.R. 53 (Bankr. D. Utah 1982). *Booth* is the seminal case in the line of cases that allow a debtor, as vendee, to treat such contracts as secured claims subject to cure and reinstatement rather than as executory contracts that require assumption or rejection. The Eleventh Circuit's *General Development* opinion reads, in pertinent part as follows:

> GDC concedes that although state law generally governs questions of property rights in bankruptcy in the absence of any conflict between state law and bankruptcy law, this deferral to state law gives way where there is a specific federal interest governing the relationship between the parties in bankruptcy. Such a federal interest exists here, GDC maintains. As recognized by one court "Congress has expressed an overriding federal interest in certain executory contracts, i.e., collective bargaining agreements and *real property sales contracts when the debtor is the seller ...*" *In re Buchert,* 69 B.R. 816 (Bankr.N.D.Ill.1987), *affirmed,* 1987 WL 16019 (N.D.Ill.1987) (emphasis added).
>
> The distinction between a debtor as the seller versus a buyer of real property is fundamental to the determination of whether the sales contract may or may not be deemed executory, GDC asserts. This is because:
>
>> . . . non-debtor vendees, by virtue of Sections 365(i) and 365(j), may receive more favorable treatment in bankruptcy than debtor/vendees. And

5

debtor/vendors, because of other policies and provisions in the Code, may fair better than debtor/vendees. It may be argued that this disparity in treatment is warranted because of the risk of default when debtor is vendor, or because the non-debtor . . . is an innocent victim.

*In re Booth,* 19 B.R. 53, 63 (Bankr.D.Utah 1982). The court concluded that:

. . . it is the consequences of applying Section 365 to a party, especially in terms of benefits to the estate and the protection of creditors, not the form of contract between vender (sic) and vendee, which controls.

*General Development*, 84 F.3d at 1371 (quoting *Booth*, 19 B.R. at 63). The *General Development* opinion also made reference to another Eleventh Circuit case:

While it does not appear that the Eleventh Circuit has adopted the "functional approach" over the "Countryman approach", the Eleventh Circuit in *In re Martin Brothers Toolmakers, Inc.,* 796 F.2d 1435 (11th Cir.1986) appears more inclined to embrace the "functional approach." In *In re Martin Brothers Toolmakers, Inc.,* the Eleventh Circuit stated in dicta:

It is true that a real estate lease, as well as an installment sales contract, may be the functional equivalent of a secured financing transaction. [citations omitted] The determination in bankruptcy, however, of whether a particular agreement is in fact a lease or a security agreement for purposes of § 365 often depends on *which characterization will best serve the interests of the estate*. Section 365 enables the bankruptcy trustee to affirm or reject leases and executory contracts, and is based on the trustee's long-standing power to abandon obligations burdensome to the estate.(emphasis added).

*Id.* at 1439. Citing the Sixth Circuit, the Eleventh Circuit continued:

The key, it seems, to deciphering the meaning of [§ 365's lease-executory contract provision] is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, the [agreement] is not [a lease or executory contract] within the meaning of the Bankruptcy Act.

*Id.* (citing *In re Becknell & Crace Coal Co., Inc.,* 761 F.2d 319, 322 (6th Cir.1985)).

6

*General Development*, 84 F.3d at 1375.  Accordingly, the Eleventh Circuit has endorsed the functional approach[3] when it comes to the treatment of land installment contracts in a bankruptcy case, and that approach will be utilized by this Court in considering whether the Agreement for Deed should be treated as an executory contract or a secured transaction.  If the former, it must be assumed or rejected in the Plan pursuant to Code § 1322(b)(7), but if the latter, the prepetition default may be cured while the ongoing maintenance installments are paid pursuit to Code § 1322(b)(5).  Under this approach, the Court must take into account that preserving the chapter 13 consumer-Debtor's residence is of utmost importance to the estate, and to the success of the Debtor's chapter 13 plan.

The Court has considered the bankruptcy court's decision in *In re Parker*, 2004 Bankr.LEXIS 1128 (Bankr. S.D. Ala. 2004), cited by the Creditor in support of its position.[4]  In the *Parker* case, as in the case now before this Court, the "agreement" was purportedly

---

[3] In *Thompkins v. Lil' Joe Records*, 476 F.3d 1294 (11th Cir. 2007), the Eleventh Circuit stated, "We note that the bankruptcy court's approval of the rejection of the 1989 Agreement would be consistent with the 'functional approach' to 'executoriness' that we have tacitly approved in our precedent."  (citing *General Development*, 84 F.3d 1364).

[4] The Creditor also cites *In re Dunn*, 2006 WL 3079632 (Bankr. N.D. Ala. 2006) and *Taunton v. Reding (In re Taunton)*, 306 B.R. 1 (M.D. Ala. 2004) in support of its position that the Agreement for Deed should be treated as an executory contract under Alabama law, and deemed terminated.  The *Taunton* case dealt with a debtor in the position of vendor in a land installment sale contract, which distinguishes the outcome of that case under the functional approach adopted by the Eleventh Circuit in *General Development*.  In addition, the *Dunn* opinion cites both *Taunton* and *General Development* for the proposition that installment land sale contracts should be treated as executory contracts in bankruptcy.  *See Dunn*, 2006 WL 3079632 at *3.  However, such a broad characterization, while technically accurate under the facts of those two cases in which the debtor was the vendor, does not account for the fact that the Eleventh Circuit in *General Development* established an approach that centers the inquiry on the effect of such treatment on the bankruptcy estate.  *General Development* made it clear that the effect will vary depending upon whether the debtor is the vendor or vendee, and further quotes extensively in support of its rationale from a bankruptcy case finding that the result is indeed the opposite when the debtor is in the position of vendee in a residential installment land sale contract such as the Agreement for Deed in the instant case.

7

terminated prepetition by the creditor-vendor, and the court found that under Alabama law, the debtor's rights had been lost under the agreement's forfeiture provisions and could not be saved through the debtor's chapter 13 plan. However, the inquiry should not begin and end with the application of state law, but as emphasized in *General Development*, with the effect that the application of Code § 365 would have on the estate, as well the impact on the creditor if its claim were treated as secured.

The effect in this case of treating the Agreement for Deed as an executory contract that must be assumed or rejected under Code § 365 would be to require that the Debtor promptly cure (or provide adequate assurance that such prompt cure is forthcoming) the arrears totaling $4,500 or lose her home. While the Debtor's Schedules suggest she has the ability to cure the arrears over the life of the plan, she does not have the wherewithal to cure the default at confirmation of the Plan or provide assurances of a cure soon thereafter. Thus, treating the Agreement for Deed as a secured claim allows the Debtor to cure the arrears over the life of the Plan, while maintaining her ongoing payments as they come due, exactly the opportunity Congress intended financially distressed homeowners to have under Code § 1322(b)(5).

In the *Booth* case, the debtor-vendee was a real estate broker who had purchased property from the objecting sellers under a contract for deed controlled by Utah real estate law. 19 B.R. at 54. The debtor wanted to treat the contract for deed, which required regular payments and withheld delivery of the deed until the payments were completed, as a secured transaction, and the sellers objected, insisting upon assumption or rejection of what they believed to be an executory contract. *Id.* The bankruptcy court in *Booth* allowed the debtor-vendee to treat the contract as a secured transaction, and explained the rationale behind its use of the functional approach:

> [I]n the final analysis, executory contracts are measured not by a mutuality of commitment but by the nature of the parties and the goals of reorganization. A debtor as vendee is free from the constraints of Section 365, and is thereby afforded flexibility in proposing a plan, but meanwhile must provide, upon request, adequate protection to vendors. A debtor as vendor may use Section 365 as a springboard to rehabilitation, but not at the expense of vendees. Thus, it is the consequences of applying Section 365 to a party, especially in terms of benefit to the estate and the protection of creditors, not the form of contract between vendor and vendee, which controls. This conclusion is supported by many statutory provisions and much judicial gloss.

19 B.R. at 56-57 (citations omitted).

This Court's reading of the functional approach explained in *Booth* and approved by the Eleventh Circuit also squares with a Pennsylvania bankruptcy case in which the creditor-vendor was attempting to dispossess a defaulting debtor-vendee under an installment land sale contract. *In re Fox*, 83 B.R. 290 (Bankr. E.D. Pa. 1988). The court in *Fox* also relied on the functional approach espoused in *Booth* and approved by the Eleventh Circuit in *General Development*:

> The novel and determinative issue presented by the matters before us is whether the Debtor is entitled to treat the Agreement in issue, the installment land sale contract . . ., as a security device rather than as an executory contract. Although this is a close issue, and one on which the authorities are split, we are inclined to allow the Debtor to do so, principally because we believe that 11 U.S.C. § 365 should be conceptualized as a tool of the Debtor, to benefit the estate at the Debtor's option whenever possible, and *should rarely, if ever, be used as a basis to deprive a consumer-debtor of a residence.*

*Fox*, 83 B.R. at 294 (emphasis added).

The court in *Fox* thoroughly examined cases on both sides of the issue, and discussed the various rationales employed in reaching different results. *See* 83 B.R. at 295-298. The court discussed a case decided under Ohio law which, like Pennsylvania and Alabama law, specifically designated land sale installment contracts as executory, and points out that such designation is "not determinative of the issue for federal bankruptcy purposes." *Fox,* 83 B.R. at 297-98 (quoting *In re Johnson*, 75 B.R. 927, 930 (Bankr. N.D. Ohio 1987)). The *Fox* court further made

9

the point that the "Supremacy Clause would prevent the [state] legislature from fixing the status of such contracts in a manner inconsistent with the bankruptcy code." *Id.* at 298.

Preserving homes is an important and worthwhile function of chapter 13. This Court is not inclined to recognize the forfeiture provisions in the Agreement for Deed that will have the effect of dispossessing the Debtor from her home while she remained in possession when her chapter 13 case was commenced and no final judgment for possession has been issued**.** *See In re Mumpfield*, 140 B.R. 578, 580 (Bankr. M.D. Ala. 1991) (discussing rights of debtor as vendee under installment land sale contract and determining that such rights are property of the bankruptcy estate under Code § 541 stating, "It may be argued that it is not property as of the commencement of the case because of the acts of the defendant in terminating the contract and seeking eviction, but the debtor does have some interest since she is still in possession."); *Cf. In re Morgan*, 181 B.R. 579, 584-85 (Bankr. N.D. Ala. 1994) (holding that under Alabama landlord-tenant law, and not in the context of an installment land sale contract, a "possessory toehold" provides sufficient interest in the property to form the basis for assumption, as "termination" did not "effect some mystical disappearance of the lease which cannot be undone," until such time as a "writ of restitution is finally entered and no appeal is taken or stay of the writ's execution is obtained."). Commencing a chapter 13 case on the eve of a mortgage foreclosure stays the sale and allows a debtor a chance to cure the default through plan payments. There is no logical reason the Debtor-vendee in this case should not have the same opportunity to save her home which remains in her possession. [5]

---

[5] The court in *Booth* speculates that "if forfeiture is invoked prepetition, and if no further act is necessary to terminate the contract, the interest of the vendee may expire before a petition can be filed," but then questions whether the provisions for cure and repayment under a plan would trump such forfeiture under state law. 19 B.R. at 58, n.9. This Court finds that the possessory interest of the Debtor is indeed sufficient to bring the Agreement within the cure and

Application of the functional approach to the instant case not only is beneficial to the Debtor, but also protects the interest of the Creditor. As the court in *Booth* explained:

> Classifying the contract for deed, where debtor is vendee, as a lien rather than an executory contract benefits the estate by enlarging the value of the estate and furthering the rehabilitation of the debtor. Sellers, as lienors, enjoy adequate protection. This is in harmony with the rationale for Section 365(i) and 365(j). The blessings and burdens of reorganization are fairly distributed between the creditors and the estate.

19 B.R. at 63 (citations omitted).

Under the Debtor's Plan in this case, as anticipated by Code § 1322(a)(5), the Creditor will retain the economic benefit of its bargain, although that bargain will be modified to allow the arrears to be paid over the life of the Plan. The Creditor will retain the right to move for stay relief for cause, including lack of adequate protection based on the typical mortgagee-asserted grounds of failure to provide insurance or pay taxes, as well as in default in the ongoing payments. Treating the Agreement as a secured claim rather than an executory contract thus preserves the benefits of the bargain for the Debtor, the estate, and the Creditor.

In discussing the adequate protection of creditors under such arrangements, the court in *Booth* explains:

> Vendors have two rights under a contract for deed: the right to payment, which is not adequately protected, and the right to hold title as security, which is adequately protected. While the right to payment is suspended, the interest in property is adequately protected. This strikes a balance between vendors, other creditors, and the estate. Vendors are not preferred, for example, in terms of administrative claims, but are treated on a par with other mortgagees, who are protected against any decrease in the value of their liens.

---

repayment provisions of a chapter 13 plan and thereby avoid the forfeiture of the Debtor's homestead and the resulting negative impact on the estate. If the property were vacant or a final judgment awarding possession to the Creditor had been entered in state court when the petition was filed, this Court might hold differently.

19 B.R. at 61 (citations omitted).  *See also Mumpfield*, 140 B.R. at 580 (pointing out that allowing the debtor to maintain the residence and cure the defaults over the life of the plan damages neither party, where the creditor will receive the benefit of its bargain).

In the instant case, if the Debtor accomplishes what she proposes in her Plan, the Creditor will come out of the bankruptcy whole and in the same position it would have been had no bankruptcy intervened:  with all arrears cured and the Debtor on track with the monthly payments, and with no change in the Agreement's maturity date.  If the Debtor does not perform, the stay can be terminated and the Creditor may exercise it remedies to terminate the Debtor's interest in the property and gain possession, including dispossession with the assistance of the state courts.

Order

Based upon the foregoing, the Creditor's Objections to Confirmation (Docs. 33, 56) are OVERRULED and the Creditor's Motion to Determine that No Leasehold Existed (Doc. 34) is DENIED.

So ordered this the 19th day of September  2013.

/s/ James J. Robinson_____  
JAMES J. ROBINSON  
U.S. BANKRUPTCY JUDGE